758 P.2d 792

**Edward FRATELLO, et ux., d/b/a Viva Chrysler Plymouth Dodge Sales, Plaintiffs–Appellees and Cross–Appellants,**

v.

**SOCORRO ELECTRIC COOPERATIVE, INC., a New Mexico corporation, Defendant–Appellant and Cross–Appellee.**

No. 17504.

Supreme Court of New Mexico.

Aug. 3, 1988.

Stephenson, Carpenter, Crout & Olmsted, Rebecca Dempsey, Santa Fe, Lance R. Bailey, Socorro, for defendant-appellant and cross-appellee.

Patsy D. Reinard, Socorro, for plaintiffs-appellees and cross-appellants.

## OPINION

SOSA, Senior Justice.

Defendant-appellant-cross-appellee, Socorro Electric Cooperative, Inc. (Co-op), appeals an adverse judgment in favor of plaintiff-appellee-cross-appellant, Edward Fratello, *et ux.*, d/b/a Viva Chrysler Plymouth Dodge Sales (Viva), rendered by the trial court on November 6, 1987. Viva had filed its complaint for declaratory judgment and for injunctive relief against Co-op on April 3, 1987, seeking the court's judgment on a purported settlement agreement that the parties had entered into concerning the sale by Viva to Co-op of certain trucks to be used by Co-op in its business. Viva based jurisdiction for its suit on NMSA 1978, Sections 13–1–28 to –199 (Repl.Pamp. 1985), known as the "Procurement Code." The trial court awarded judgment to Viva in the amount of $3,000, plus attorney's fees of $1,000 for Co-op's contempt of court in not complying with what the court defined as "the court-sanctioned settlement agreement." Co-op appeals the entire judgment, while Viva appeals that portion of the judgment awarding Viva $3,000, contending that the trial court should have awarded it $3,600. We reverse the judgment of the trial court as to Co-op, and thus do not need to reach the issue raised by Viva as to the amount of damages.

## FACTS

Co-op announced by letter of February 13, 1987, that it would accept bids from truck dealerships for the purchase of two one-ton cab and chassis trucks, and three one-half ton pickup trucks. In its letter, Co-op stated: "The Socorro Electric Cooperative, Inc. reserves the right to reject any or all bids. Lowest bidder will not necessarily be awarded bid." Viva and a certain Ford dealership, Monette Ford, bid for the contract, and Co-op accepted the latter's bid, even though Viva's bid was lower. When Viva learned of this fact, it filed suit, alleging, "[Viva] was the lowest responsible bidder on the five vehicles by approximately $12,000." Viva asked the trial court to "declare [its] contract rights in and to the Invitation to Bid * * *," alleging that its trucks were superior to the Ford trucks and complaining that, "until the contract rights of the parties hereto have been established by the Court, it would be extremely prejudicial and potentially damaging to allow work to proceed on the contract."

Based on these allegations, the trial court granted Viva's *ex parte* "Motion for Temporary Restraining Order and Preliminary Injunction," and by its temporary restraining order of April 3, 1987, ordered Co-op to rescind its contract with the Ford dealership until the court could determine the issues, at a hearing on Viva's motion for preliminary injunction scheduled for April 14, 1987. At that hearing, the attorneys for both parties announced that they had reached a settlement agreement, stated in the words of Viva's attorney as follows:

Your Honor I would like to announce that the parties have settled their differences as neighbors and friends should, uh, the Co-op has agreed to modify it's

[sic] contract with MOnette [sic] Ford and will award the three pickups specified to Viva Chrysler with the provided [sic] though that is 1987 Dodges cannot be provided the 1988's will be provided at no greater price than the '87 bid price by Monette Ford. And both parties will bear their own costs.

The court then asked opposing counsel, "Is that is [sic], Mr. Bailey?" We take the court to have meant, "Do you agree that this is the settlement agreement, Mr. Bailey?"

Mr. Bailey answered as follows:

No. [sic] your Honor that's correct, I would say that uh, we want to make it clear that no determination was made as to right or wrong on either side [sic] this again I want to emphasize was a compromise between neighbors and very much included Mr. Monette; [sic] he's not a party to this suit but he sure helped all of us, the three of us.

The court's response to this statement was, "Okay, draft an order, okay."

The court did not specify which attorney was to draft the order, but counsel for Viva sent to counsel for Co-op a document entitled "Stipulation for Dismissal," adding to the language quoted above, the statement, "The parties understand that if 1988's are ordered, they may not be available until August or September of 1987, and the parties agree to any such delay." On the basis of this additional provision to the agreement, and because Co-op could never pin Viva down as to the exact price Viva was going to charge Co-op for the trucks, Co-op's attorney refused to sign the Stipulation for Dismissal, and thus an order of dismissal was never entered by the court. Nor did the court ever enter any order, other than perhaps the original *ex parte* temporary restraining order, which automatically expired ten days after its issue (SCRA 1986, 1–066(B)(2)), requiring Co-op to accept the terms of Viva's Stipulation for Dismissal.

On June 3, 1987, Viva filed its "Motion to Enforce Settlement Agreement and for Sanctions," and on June 25, 1987, the court granted Viva's motion, disallowing testimony from Co-op on why Co-op's attorney refused to sign Viva's Stipulation for Dismissal. Instead, the court held Co-op in contempt for not adhering to the court's "order" to rescind its contract with Monette Ford, and awarded Viva $1,000 in attorney's fees (Viva had asked for only $300). Co-op filed its "Motion to Reconsider" the court's ruling of June 25, alleging that fifteen minutes had been inadequate time to inform the court of Co-op's position and that the decision of the court was in conflict with, and granted relief not asked for in the complaint. The purpose of Co-op's motion was to inform the court why it had not carried through on its promise to settle with Viva. Co-op's motion to reconsider was heard on August 10, 1987, but instead of making a ruling, the court appointed three arbitrators to determine certain factual matters concerning the profit Viva would have made had Co-op honored the settlement agreement, and the date when Viva would have delivered the pickups. Based on the arbitrator's report, the court issued a letter decision finding that Viva "would have netted * * * a total of $3,000—a sum slightly less than what the [arbitration] committee reached [$3,600]."

Each side then submitted proposed findings of fact and conclusions of law, and the court issued its own findings, stating that "[Viva] is awarded damages of $3,600 against [Co-op] for breach of their valid settlement agreement * * * [and Viva] is awarded $1,000 in attorneys fees for [Co-op's] contempt of the court-sanctioned agreement * * *." In its "Final Judgment," the court changed the figure of $3,600 to $3,000 and initialed the change.

## LEGAL ISSUES INVOLVED

I. *Did the trial court have jurisdiction over this case? No.*

In its complaint Viva explicitly alleged, "[The] jurisdiction of the Court is grounded on Section 13–1–183, New Mexico Statutes Annotated (1978 Comp.) [sic]." NMSA 1978, Section 13–1–183 pertains to judicial review under the Procurement Code of "determinations * * * made by a state agency or a local public body * * *." Section 13–1–30 provides that the Procure-

ment Code "shall apply to every expenditure by state agencies and local public bodies for the procurement of items of tangible personal property, services and construction." NMSA 1978, § 13–1–30 (Repl. Pamp.1988). Co-op is neither a state agency nor a local public body, and therefore the Procurement Code does not apply to it. NMSA 1978, §§ 13–1–67, and –90 (Repl. Pamp.1985). As a result, the trial court improperly asserted jurisdiction over Co-op, and any "orders," real or imagined, issued to Co-op by the trial court were null and void. The parties cannot consent to jurisdiction that is falsely premised. *State ex rel. Overton v. New Mexico State Tax Comm'n,* 81 N.M. 28, 462 P.2d 613 (1969). Co-op properly raised the trial court's lack of jurisdiction on appeal. *Lasley v. Baca,* 95 N.M. 791, 626 P.2d 1288 (1981).

II. *Did the parties enter into a valid settlement agreement? No.*

■ The "Stipulation for Dismissal" drawn up by counsel for Viva and submitted to counsel for Co-op added a significant additional term to the parties' attempted settlement agreement, and is thus to be considered a counter-offer to Co-op's offer to settle. *See, e.g., Roto–Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497 (1st Cir.1962), and *Construction Aggregates Corp. v. Hewitt Robbins, Inc.,* 404 F.2d 505 (7th Cir.1968), *cert. denied,* 395 U.S. 921, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969). In order to constitute a binding settlement contract, as asserted here, it was necessary for there to be an unconditional acceptance of Co-op's offer of settlement. Viva, by adding a significant additional term to its Stipulation for Dismissal, did not make an unconditional acceptance of Co-op's offer *See Silva v. Noble,* 85 N.M. 677, 515 P.2d 1281 (1973). As we concluded in *Silva v. Noble,* so too here, "There is conflicting evidence in the record * * * on the issue of whether there was an agreement between the parties * * * * In order to constitute a binding contract, there must be an unconditional acceptance of the offer made." *Id.* at 678, 515 P.2d at 1282.

In the case before us, the record shows that Co-op could not get Viva to make a firm commitment either on the price of the Dodge trucks or on the date of delivery. By proposing in its Stipulation for Dismissal that "[t]he parties understand that if 1988's are ordered, they may not be available until August or September of 1987, and the parties agree to any such delay," Viva placed the entire settlement contract in jeopardy, and Co-op's counsel was justified in not signing the Stipulation. Co-op had on numerous occasions advised Viva that specific price and delivery information was essential to Co-op's budgeting and auditing requirements, and that such information was needed well before the fall of 1987 because of the nature of Co-op's business. We hold that there was no settlement agreement entered into between the parties.

III. *Did the trial court err in holding Co-op in contempt? Yes.*

■ From the above, it follows conclusively that the trial court erred in using its contempt power to attempt to enforce the non-existing settlement agreement, and á fortiori, the court erred in assessing attorneys' fees of $1,000 against Co-op because of the purported contempt.

Accordingly, we reverse the judgment of the trial court in its entirety and remand the case to the trial court for entry of an order of dismissal for lack of jurisdiction.

IT IS SO ORDERED.

STOWERS and RANSOM, JJ., concur.